## WRONGFUL SUSPENSION OF A RETIRED POLICEMAN FROM THE PENSION ROLL.

Court of Appeals for Hamilton County.

STATE OF OHIO, EX REL JEREMIAH DELANEY, v. JOHN R. HOLMES, AS PRESIDENT OF THE BOARD OF TRUSTEES OF THE POLICE RELIEF FUND OF THE CITY OF CINCINNATI ET AL.

Decided, May 17, 1915.

*Pensions to Retired Police Officers—Discontinuance of Payment by a Board Without Authority to Act—Proper Remedy of the Officer to Enforce Payment—Application of the Statute of Limitations.*

1. Acquiescence in the action of a person or official board can not be charged where the person or board taking such action was without power or jurisdiction to act.
2. Where a member of the police force has been retired for disability and placed on the pension roll, and is thereafter suspended .from said roll by a board acting without authority, his right of action

for a writ of mandamus to compel the issuance of a warrant for the pension of which he was thus deprived is by analogy limited to the six years from the time when his right of action accrued.

3. A pension being in the nature of a gratuity there is no legal liability for its payment which can be enforced in an action for money, but the remedy for recovery of a pension, payment of which has been wrongfully discontinued, is by mandamus.

*Denis F. Cash* and *Henry T. Hunt,* for relator.

*Walter M. Schoenle* and *Saul Zielonka,* City Solicitors, contra.

GORMAN, J.; JONES (E. H.), J., and JONES (Oliver B.), J., concur.

The relator brings this action in mandamus to require the defendants, Trustees of the Police Relief Fund of the City of Cincinnati, to draw their order on the treasurer of the city for the sum of $6,800 with interest, the amount of back pensions at the rate of $50 per month which he claims to be due him since September, 1903.

The pleadings, admissions and proof disclose that in 1887 the relator became a member of the police force of said city and continued actively in the service until 1898 when he was obliged to discontinue active service on account of two injuries received while in the service in the line of his duty; that on February 13, 1900, while a patrolman in good standing in said force, upon the recommendation of the mayor of said city and the approval of the police commissioners he was duly retired from active service by reason of physical disability, and placed on the pension rolls of said city, as provided by law; that at that time, under the rules and regulations of the trustees of the police relief fund, duly and legally adopted and approved, he was entitled to a pension of $50 per month for life to be paid monthly on the orders of said trustees, drawn on the treasurer of said city, payable out of said fund; that said trustees thereupon duly and legally granted and allowed said pension of $50 per month pursuant to the rules of said trustees, and thereupon said pension was duly and

regularly paid him, each and every month up to September, 1903, when said trustees of said fund refused, omitted and failed to pay him any further sums on account of said pension, and has since failed, refused and neglected to pay him anything whatsoever as and by way of a pension; that at the time of the retirement of Delaney and the granting of his pension he was in the state of Florida, and this fact was known to the mayor of the city and the police commissioner and trustees of said fund; and thereafter and up to the present time he has continued to be a resident and elector of the state of Florida. In August, 1903, the trustees of said fund adopted a resolution requesting each pensioner retired on account of physical disability to be examined by a physician as to his physical condition and furnish a certificate of such examination and that the committee to be appointed by September 1, 1903, ascertain what the pensioners are doing and if they are still entitled to pensions.

On September 8th, relator was cited to appear before the board of trustees on September 11, and show good cause why his pension should not be discontinued. At that time Delaney was in Florida, and he testified that he received no notice to appear, and that he could not have reached Cincinnati on the 11th of September if he had in due course received the notice. The minutes state that attorney Thomas Darby, claiming to represent Delaney, was present on September 11th, but Delaney testified and his testimony is uncontradicted, that he never authorized Darby to appear for him.

Certain communications were received from Florida officials concerning Delaney's alleged misconduct and violation of the laws of Florida which were ordered filed, and the trustees of said fund on that day suspended the payment of Delaney's pension, and ordered an investigation to be made as to whether or not his pension should be discontinued. On October 9, 1903, the payment of Delaney's pension was further suspended and a committee was appointed to confer with the mayor and chief of police, with a view to filing charges against him to cause his dismissal from the force and a revocation of his pension.

A committee was appointed, and on November 16, 1903, reported that they had requested an opinion from the city solicitor as to the proper method of procedure. The opinion of the solicitor is not in evidence. The committee recommended that inasmuch as Delaney failed to answer summons to appear before the board of trustees and show good cause why his pension should not be revoked, that his name be dropped from the pension roll. The committee's recommendation was not adopted, but on that date further payment of his pension was again suspended until such time as he shows good cause why his pension should not be permanently discontinued.

On December 7, 1903, the trustees directed a communication to be addressed to County Solicitor Bryan, of Duval county, Florida, stating that Delaney's pension was suspended because he had forfeited his residence in Cincinnati by becoming a resi-. dent of Florida, thereby removing himself from the control of the board of trustees; and that his alleged criminal act had nothing to do with the action of the board in the matter.

Nothing further occurred, as shown by the minutes of the trustees, until June 3, 1913, when Delaney made application for reinstatement as a pensioner, and his application was then and there rejected. On October 1, 1914, he again applied to the trustees for reinstatement, and on January 7, 1915, the trustees refused to reverse the action of the former board of trustees. Thereupon this action was brought.

The law governing the police relief fund and the granting of pensions is found in Sections 4616 to 4631, inclusive, of the General Code. A copy of the rules of the trustees in force when Delaney was placed on the retired list and still in force and unchanged down to 1905, were attached to the reply, and were offered in evidence ("Ex. A," Bill of Exceptions). The amount of pension to be granted is not fixed by statute but by the rules of the trustees.

The police relief fund is raised and maintained by a tax levy not to exceed three-tenths of a mill, by donations, fines imposed on the members of the force in disciplining them, contribu-

tions from members of the force, and the proceeds of the sales of unclaimed property and money in the police department.

The board of trustees had no power or authority, under the law or their rules, to suspend Delaney's pension or to revoke the same. Their duties are and were purely ministerial (*State, ex rel Rothgery,* v. *Trustees of Firemen's Pension Fund,* 20 C.C. [N.S.], 13). The constitution and by-laws of the Police Relief Association, which are attached to the bill of exceptions (Exhibit A) and which constituted the rules of the trustees of the fund when Delaney was placed on the pension rolls and when the trustees undertook to suspend the payment of his pension, contain no provisions authorizing such action, nor is there any warrant or authority under the statutes governing this fund, which would authorize the trustees of this fund to suspend or revoke any one's pension. By Rule 44 pensions in the police department were to be granted upon the recommendation of the mayor or board of directors, and the approval of the police commissioners, and when so granted it shall be the duty of the president and the secretary of the board of directors, together with the president of the board of police commissioners, to sign and attest monthly warrants for pensions. The official notification of the clerk of the board of police commissioners shall give the proper authority.

By Rule 45 it is provided that pensions may cease on restoration to duty and full pay. The police commissioners' board under the law and the rules, was the only body authorized to recall a pensioner to duty and full pay; and whenever they did this the clerk of the commissioners under this rule 45 should notify the directors or trustees of the fund, of that fact, and thereupon the pension should cease and the officers of the directors or trustees should cease signing warrants for such discontinued pension.

By rule 46 any member of the police force who shall while in the performance of his duty, become, or be found upon examination by the board of police commissioners to be physically or mentally permanently disabled so as to render necessary his

retirement from all service in the police department, upon the recommendation of the mayor, with the approval of the board of police commissioners, shall be allowed a pension of $40 a month, payable from the fund.

By rule 52 honorably retired members of the force shall have no interest in the fund other than that provided for them in the constitution and by-laws, and they shall not be subject to dues or assessments.

The mayor and the police commissioners were the only ones who had authority to grant, suspend or revoke pensions.

By the provision of Section 4699, General Code, the board of trustees shall administer and distribute the police relief fund.

By the act of April 23, 1902 (95 O. L., 223-229), paragraph (g) the rights of pensioned members were preserved, and under the law as then amended and by the act of April 20, 1904 (97 O. L., 241-251), paragraph (g), these rights were again recognized and preserved. On November 20, 1905, minutes of trustees, 362-363, the amount of the monthly pension of disabled retired members was raised to $50 per month, and that rule continues in force to this day. Removal from the state of Ohio under the law and the rules did not constitute a forfeiture of the pensioner's rights. While the police commissioners and the mayor might have made such a rule, and perhaps the trustees of the fund might also have promulgated such a rule, as a matter of fact no such rule was ever adopted by anybody having any connection with the police department or the fund. Neither the statutes nor the rules have made violation of laws or criminal acts or conduct on the part of the pensioner a cause of forfeiture of his pension; and no authority is lodged by statute or the rules of the trustees in the board of trustees of the fund, to deprive a pensioner of his pension, or to suspend or revoke the same.

Delaney's pension was never revoked by any body. The trustees undertook to suspend it, from time to time, but their acts in this regard were without authority and wholly null and void. Such actions of the trustees had no more effect on Delaney's

rights than if they had been taken by the city treasurer or any other person or body. There was no jurisdiction in the board of trustees to suspend Delaney's pension.

It is urged that Delaney had misconceived his remedy and that he has an adequate remedy at law in an action against the city to recover the amount of his withheld pensions. We think that the pension being a gratuity, there is no legal liability which could be enforced in an action at law to recover either damages for breach of contract or for moneys due. His remedy is in mandamus, and he is properly before this court. *State, ex rel Rothgery,* v. *Trustees of Firemen's Pension Fund,* 20 C.C.(N.S.), 13; *Karb* v. *State,* 54 O. S., 363; *Commrs of Wood Co.* v. *State, ex rel Holz,* 41 O. S., 423; *State, ex rel Weiss,* v. *Keefer et al,* 20 C.C.(N.S.), 366.

Mandamus is now held to be a civil action and may therefore be subject to the statute of limitations, if there be facts to show that the statute operates. *State* v. *Philbrick,* 69 O. S., 283.

We do not think that Delancy is chargeable with laches or acquiescence in the suspension of his pension, because the board of trustees having no power to suspend his pension their action was null and void and there was no legal action in which he could acquiesce. Before one can be charged with acquiescence in a wrongful action, the person or body taking the action must have had power to act, but acted wrongfully, unjustly or without proceeding properly. There can be no acquiescence where the action taken is without jurisdiction or power. Where there is no power to act, the case stands as though no action had been taken.

We think this case is ruled by the case above cited, *State, ex rel Rothgery,* v. *Trustees of Firemen's Pension Fund,* 20 C.C. (N.S.), 13.

We are of the opinion, however, that by the failure and neglect of Delaney to assert his rights, his claim is subject, by analogy, to the rule that would apply to a case where the statute of limitations could be invoked. This statute which might be invoked if it were an action to recover the money, is Section

11224—Sub. 4—the four years statute. An action shall be brought within four years after the cause thereof accrued. 4. For an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated. His right to bring mandamus would accrue or arise each month. When his pension became payable, a refusal to issue a warrant in his favor by the trustees, would give him a right to sue in mandamus; so that part of his claim which ante-dates four years from the commencement of this action should not be allowed, but he will be entitled to a writ commanding the defendants to issue a warrant upon the city treasurer for a sum equal to fifty dollars per month for the four years preceding the filing of the petition herein, and from that date, together with interest on each installment of $50 from the date the same should have been paid, up to the date of the decree herein.

Judgment accordingly.

Both parties filed motions for a new trial in this case.

Defendants set out several grounds upon which they claim the motion should be granted. The court does not consider any of the grounds well taken by defendants, and does therefore overrule their motion for a new trial.

The plaintiff's motion for a new trial is based upon the ground that the decision of the court is contrary to the law and the evidence and against the weight of the evidence. In the argument

to the court on this motion plaintiff's counsel claimed that the court erred in holding that the plaintiff could not recover his pension beyond a period of four years prior to the commencement of this action, and in holding that although the statute of limitations does not apply to this case, nevertheless by analogy the rule laid down in Section 11224 limiting the recovery to four years, when the action is a civil one for an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated.

The court was in considerable doubt as to whether or not the plaintiff would be barred from a recovery by reason of his laches, and if so what rule of the statute of limitations by analogy should be applied to this case. Upon further consideration we are of the opinion that the better rule to apply is the one laid down in Section 11222, General Code, which limits actions upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture of penalty, to a period of six years after the cause thereof accrued.

In a case somewhat similar to the one at bar, entitled *Merrill* v. *Board of Education of Cincinnati,* 4 C. C., 97, the circuit court of this county held that where there had been such conduct on the part of the relator as amounted to a waiver on his part of compensation for a part of the time he acted as a school examiner, in analogy to the statute of limitations the court should now refuse a writ of mandamus requiring the board of education of the city of Cincinnati to fix the compensation of the relator for any period prior to six years before the commencement of this proceeding.

In that case the court by analogy applied the rule laid down in Section 11222, General Code. We therefore conclude that the rule laid down in the above entitled case should be followed by us, and there will be a modification of the opinion heretofore rendered herein limiting the right of the plaintiff to recover to a period of six years prior to the date of the commencement of this action.