**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1680
_____

G. S., through her Parents JUDY S. and GEOFF S. of West Chester, PA,
Appellants

v.

WEST CHESTER AREA SCHOOL DISTRICT
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-19-cv-03844)
District Judge: Honorable John M. Younge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 10, 2022
_____

Before: GREENAWAY, JR., SCIRICA, and RENDELL, *Circuit Judges*.

(Opinion Filed: June 22, 2022)

_____

OPINION*
_____

**GREENAWAY, JR**., *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Judy S. and Geoff S., the parents of G.S., seek review of the District Court's order affirming the decision of the hearing officer denying their request for special education services for G.S. Specifically, the parents had sought special education services pursuant the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-82 ("IDEA")[1] and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").[2] For the reasons set forth below, we will affirm.

## A.  Background

G.S., a girl born in 2007, attended kindergarten at a parochial school during the 2012-13 school year. The parents and staff of that school concluded that G.S. should repeat kindergarten at a second parochial school, where she also attended first grade.[3]

At the suggestion of the faculty at the second parochial school, the parents enrolled G.S. in public school for second grade. The parochial school's suggestion was based on the belief that G.S. "would benefit from the additional reading help that would be available at and could be provided by the school district." App. 6. Beginning

---

[1] The IDEA requires that all states receiving federal funding provide a "free appropriate public education" ("FAPE") to all disabled children. 20 U.S.C. § 1412(a)(1).

[2] Under Section 504, schools must "provide a [FAPE] to each qualified handicapped person who is in the [school's] jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

[3] While G.S. was in first grade at the parochial school, her parents requested that the School District evaluate her. That request was denied because G.S. "was meeting grade level academic standards." App. 68.

in the fall of 2015, G.S. was enrolled in East Goshen Elementary School in the West Chester School District. At the beginning of the school year, G.S.'s reading ability was tested. Based on the results of that testing, G.S. received reading support from the reading support teacher four days a week for 30 minutes per session. G.S. continued to receive reading support in the third grade.

On September 4, 2017, prior to G.S. commencing the fourth grade, her parents requested the School District to conduct a full neurological assessment of G.S. The School District granted the request, conducted a comprehensive evaluation including a full neurological assessment, and then issued a written Evaluation Report ("ER") on November 14, 2017. The comprehensive evaluation included classroom observation of G.S., extensive standardized testing,[4] "[G.S.]'s progress monitoring data, as well as [G.S.]'s grades, information provided from [G.S.]'s teachers and other school records." App. at 7-8. The ER concluded that, while G.S. had strengths and weaknesses, she "was performing at an average level overall." App. 8.

Dissatisfied with this result, the parents hired Kara Schmidt, Ph.D., to conduct an independent educational evaluation ("IEE"). Like the School District, Dr. Schmidt administered several standardized tests. Dr. Schmidt's test results were consistent with the School District's test results. However, Dr. Schmidt's interpretation of the results

---

[4] The ER "used grade level norms rather than age norms on the standardized testing because [G.S.] had been retained in kindergarten and age-normed testing would be inappropriate." App. 8.

differed from the School District's interpretation. Dr. Schmidt concluded that, while G.S. "has average intellectual skills," she also "has weaknesses in certain areas" which could make her eligible for special education services based on a specific learning disability ("SLD").[5] App. 11. Dr. Schmidt also concluded that G.S. had generalized anxiety disorder ("GAD").

In response to the IEE, the School District performed a Section 504 eligibility determination, specific to the generalized anxiety disorder identified by Dr. Schmidt. On November 15, 2018, the School District "issued a prior written notice stating that [G.S.] did not need accommodations under a 504 plan." App. 12.

The parents filed an administrative due process complaint. The Hearing Officer held a two-day due process hearing on November 2, 2018 and March 20, 2019.[6] The Hearing Officer "concluded that the parents have not demonstrated that the student is eligible for special education under IDEA or 504" and "that the parents have not demonstrated that the school district violated its child find duty." App. 25.[7]

---

[5] Specifically, Dr. Schmidt described G.S.'s SLD as "a pattern of language-based learning differences in reading and spelling/written expression." App. 108.

[6] "A parent who believes that a school has failed to provide a FAPE may request a hearing, commonly known as a due process hearing, to seek relief from the school district for its failure to provide a FAPE." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009) (citing 34 C.F.R. § 300.507); *see also* 20 U.S.C. § 1415(f).

[7] The Hearing Officer also concluded that the School District did not need to reimburse G.S.'s parents for the cost of the IEE. The parents have not challenged that conclusion on appeal.

4

Raising a congeries of issues, the parents sought review of this decision in the District Court. The District Court granted the School District's motion for judgment on the administrative record.[8]  The parents timely appealed.

While presenting only one question in their brief – whether the Hearing Officer and District Court erred by finding Dr. Schmidt's testimony and report to be "'medical' and thus less credible than the 'educational' testimony and report of a District school psychologist" – the parents discuss two other arguments in their brief.  Appellants' Br. at 2.  The parents also argue that the School District violated its "child find" duty[9] and that the ER was flawed because it was "incomplete" and "relied heavily and inappropriately upon report cards and mere advancement from grade to grade."[10]  Appellants' Br. at 39.

---

[8] While the statute does not explicitly use the phrase "judgment on the administrative record," the statute does direct the court to "receive the records of the administrative proceeding . . . and . . . basing its decision on the preponderance of the evidence, . . . grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  Relying on that subsection, it appears the phrase has become a term of art in some IDEA cases.  *See, e.g.*, *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 267 (3d Cir. 2012) (noting that "Ridley filed a motion for judgment on the administrative record"); *P.P. v. West Chester Area Sch. Dist.*, 585 F. 3d 727, 734 (3d Cir. 2009) (referencing the "Motion for Disposition on the Administrative Record and for Summary Judgment" filed in the District Court).

[9] Under the IDEA's child find requirement, school districts are required to identify and evaluate all students who are reasonably suspected of having a disability. *P.P.*, 585 F. 3d at 738.

[10] While the parents' brief also mentions other ways in which the District Court erred, no argument regarding those errors is provided.  In the absence of argument, we will consider those issues waived.  *Laborers' Internat'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to

**B. Analysis[11]**

In IDEA cases, district courts apply a "modified *de novo*" standard of review. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012). Under this standard of review, a district court must give "due weight" to the findings of the state hearing officer. *Id.* (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). "Due weight" means that

> "factual findings from the administrative proceedings are to be considered prima facie correct," and "if a reviewing court fails to adhere to them, it is obliged to explain why." In addition, if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. Specifically, this means that a District Court must accept the state agency's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." In this context the word "justify" demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.

*Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citations omitted).

"We, in turn, review the District Court's factual findings for clear error," and "exercise plenary review over the legal standards applied by the District Court and over its legal conclusions." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009).

---

an issue . . . will not suffice to bring that issue before this court.'" (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir. 1991))).

[11] The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## 1. Credibility determination

Before us, the parents primarily challenge the Hearing Officer's credibility determination, which the District Court accepted. The parents focus on two sentences in the Hearing Officer's decision: "The parents' evaluator looked at the student through a medical lens. The school district evaluator looked at the student through an educational lens." App. 12. According to the parents, the only reason the Hearing Officer discredited Dr. Schmidt's report and testimony was his characterization of her evaluation as "medical." That assertion ignores the detailed explanation the Hearing Officer provided for his credibility determination.

The Hearing Officer explained that he credited the school psychologist, Peggy Katsouros, and the other School District witnesses over Dr. Schmidt's testimony because of their demeanor, as well as several other factors. Those factors included:

- Dr. Schmidt's failure to consider G.S.'s grades and the results of her progress monitoring at school;

- Dr. Schmidt's inclusion of "very little information . . . concerning [G.S.'s] school performance," making her report "not comprehensive and thorough," App. 18;

- Dr. Schmidt "disregarded the parent rating scales concerning student anxiety," in concluding that G.S. had an anxiety disorder, App. 18;

- Dr. Schmidt "focused specifically on [G.S.'s] weaknesses," while Ms. Katsouros "more appropriately focused upon the whole child," App. 18;

- Dr. Schmidt used "age-normed rather than grade-normed" assessments, which

7

"was not appropriate because [G.S.] repeated kindergarten and was a full year behind most students who were her age." App. 19.

The District Court "accept[ed] the Hearing Officer's credibility determinations and [found] that no evidence in the administrative record justifie[d] a contrary determination." App. 38. The parents identified no evidence that the Hearing Officer overlooked or that would otherwise undermine the credibility determination.[12] We therefore conclude that the District Court did not clearly err in accepting the Hearing Officer's credibility determination and factual findings.

## 2. Child find

States must "identif[y], locate[ ], and evaluate[ ]" all children with disabilities who are in need of special education, and must develop "a practical method . . . to determine which children with disabilities are currently receiving needed special education and related services." 20 U.S.C. § 1412(a)(3). "This is referred to as the IDEA's child find requirement." *Ridley Sch. Dist.*, 680 F.3d at 271. "Child Find extends to children 'who are suspected of [having] . . . a disability . . . and in need of special education, even though they are advancing from grade to grade.'" *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir.2012) (quoting 34 C.F.R. § 300.111(c)(1)). "[H]owever, Child Find does not demand that schools conduct a formal evaluation of every struggling student."

---

[12] The only fact the parents point to is that Dr. Schmidt is not a medical doctor. Since the Hearing Officer never suggested that she was a medical doctor, we cannot conclude this is a fact that was somehow misinterpreted or overlooked.

8

*Id.*

Here, the School District tested G.S.'s reading ability at the beginning of her first school year at East Goshen Elementary School, provided reading support,[13] and monitored her progress throughout her time at the school. In addition, the School District promptly tested her upon her parents' request. All of her teachers testified that G.S. performed at grade level, giving none of them any reason to suspect she required special education services. We agree with the District Court's conclusion that G.S. "was not a student who was permitted to fall through the cracks." App. 51. The School District did not violate its child find duty.

### 3. ER was incomplete

The parents' argument that the ER was flawed and incomplete because it focused on G.S.'s grades is not supported by the record. In conducting evaluations, school districts are required to "[u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent." 34 C.F.R. § 300.304(b). In addition, evaluations must include "[c]urrent classroom-based, local, or State assessments, and classroom-based observations; and . . . [o]bservations by teachers and related services providers." 34 C.F.R. § 300.305(a).

Here, as required by the regulations, the ER included classroom observation, QRI

---

[13] The reading support G.S. received "was not classified as special education." App. 49.

test results, the Teacher's College Reading and Writing Assessment, the WISC-V assessment, the Fifer Assessment of Reading, the Kaufman Test of Educational Achievement, and the Woodcock-Johnson Tests of Achievement. The record is clear that the School District did much more than simply rely upon G.S.'s grades when conducting the evaluation. Not only that, but nothing in the regulations prohibits consideration of a student's grades. To the contrary, the regulations require consideration of a student's classroom-based assessments. Based on this information, we conclude that the School District's evaluation was complete and not flawed.

## C. Conclusion

For the foregoing reasons, we will affirm the District Court's order.