| MAHTAB A. LODHI AND PETER YAUKEY | * | NO. 2023-CA-0590 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| UNIVERSITY OF NEW ORLEANS THROUGH UNIVERSITY OF LOUISIANA BOARD OF SUPERVISORS AND PETER FOS | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-11537, DIVISION "D"
Honorable Inemesit O'Boyle, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Dale Edward Williams
LAW OFFICE OF DALE EDWARD WILLIAMS
212 Park Place
Covington, LA 70433

John Armand Venezia
VENEZIA & ASSOCIATES, APLC
650 Poydras Street, Suite 2828
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFFS/APPELLEES

Linda Law Clark
Monica G. Moton
DECUIR CLARK & ADAMS, LLP
732 North Boulevard
Baton Rouge, LA 70802

Phyllis E. Glazer
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street
3rd Floor
Baton Rouge, LA 70802

     COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND
AS AMENDED, AFFIRMED
AUGUST 5, 2024**

SCJ
RML
RDJ

This appeal arises from the termination of two former tenured professors of the Department of Geography at the University of New Orleans ("UNO"). UNO and Peter Fos ("President Fos") appeal the trial court's May 1, 2023 amended judgments, awarding damages in favor of Mahtab A. Lodhi ("Dr. Lodhi") and Peter Yaukey ("Dr. Yaukey"). For the reasons that follow, we affirm in part, reverse in part, amend, and affirm as amended the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Lodhi and Dr. Yaukey filed suit against UNO through University of Louisiana Board of Supervisors and President Fos, averring that on December 5, 2014, they were terminated due to the elimination of the Department of Geography without being given an opportunity to defend their employment with the university committee of tenured faculty members.

On August 21, 2020, Dr. Lodhi and Dr. Yaukey moved for a partial summary judgment on the issue of procedural due process liability. The plaintiffs

1

argued that their property rights in their tenured positions as UNO professors were revoked without notice or an opportunity to respond. The plaintiffs further argued that the absence of due process was in violation of the U.S. and Louisiana Constitution and the published academic policies of UNO.

The defendants filed an opposition, arguing that the plaintiffs' reliance on the UNO policy was misplaced and inapplicable because the elimination of the program occurred under Louisiana State University's ("LSU") governance of UNO, therefore, University of Louisiana ("UL") System's policies applied. The defendants argued that "[w]hile a faculty member with tenure would have a property interest in continued employment and have a right of notice to hearing to be informed of the grounds of a disciplinary or non-disciplinary termination, it does not require the opportunity for a hearing to precede the decision to terminate."

The trial court held a hearing on the motion for partial summary judgment on November 17, 2020. The trial court signed a judgment on November 30, 2020, granting the partial motion for summary judgment on the issue of procedural due process liability under the Louisiana Constitution. The defendants filed a notice of intent to apply for supervisory writ. This Court denied the writ on June 1, 2021. *See Lodhi and Yaukey v. University of New Orleans, through University of Louisiana Bd. of Supervisors, and Peter Fos.*, 2021-C-0025 (unpub.).

A jury trial was held from April 4 through 10, 2023. The jury returned a unanimous verdict in favor of the plaintiffs, awarding $772,020.00 in damages to Dr. Lodhi and $515,336.00 to Dr. Yaukey. The trial court signed two separate

judgments to that effect on April 25, 2023. The trial court issued amended judgments on May 1, 2023 to detail portion of the awards that represented past lost earnings, lost accrued sick leave, past and future mental anguish, loss of professional reputation, and lost fringe benefits. The following awards were rendered by the jury to Dr. Lodhi:

| | |
|---|---|
| Past Lost Earnings | $406,020.00 |
| Lost Accrued Sick Leave | $81,000.00 |
| Past and Future Mental Anguish | $175,000.00 |
| Loss of Professional Reputation | $100,000.00 |
| Lost Fringe Benefits | $10,000.00 |
| **TOTAL** | **$772,020.00** |

The jury awarded Dr. Yaukey the following damages:

| | |
|---|---|
| Past Lost Earnings | $145,336.00 |
| Lost Accrued Sick Leave | $115,000.00 |
| Past and Future Mental Anguish | $100,000.00 |
| Loss of Professional Reputation | $150,000.00 |
| Lost Fringe Benefits | $5,000.00 |
| **TOTAL** | **$515, 336.00** |

Thereafter, on May 5, 2023, the defendants moved for a judgment notwithstanding the verdict. The court denied the motion for judgment notwithstanding the verdict on June 26, 2023. This suspensive appeal follows.

## DISCUSSION

The defendants raise four assignments of error: (1) the trial court erred by granting a partial summary judgment in favor of Dr. Lodhi and Dr. Yaukey on the procedural due process claim; (2) the jury erred in finding that the Board of Supervisors breached a contract with the plaintiffs; (3) the jury erred in awarding damages for lost accrued sick leave to the plaintiffs; and (4) the jury erred in not considering Dr. Lodhi's failure to mitigate his damages after the termination of his employment with UNO. We begin our discussion by addressing the trial court's grant of the partial summary judgment.

**Partial Summary Judgment**

The defendants argue that the trial court erred in entering a partial summary judgment on the issue of procedural due process liability under the Louisiana Constitution. The defendants assert that material questions exist as to what processes were due to the plaintiffs in connection with the elimination of their positions. The defendants further argue that the plaintiffs received proper notice and were given sufficient opportunity to be heard.

"An appellate court reviews a trial court's judgment on a summary judgment motion *de novo*." *Hartley v. Univ. of Holy Cross*, 2022-0840, p. 5 (La. App. 4 Cir. 7/19/23), 370 So.3d 1151, 1157 (citing *Planchard v. New Hotel Monteleone, LLC*, 2021-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625). The appellate court utilizes "the same criteria that govern the trial court's decision as to whether a summary judgment motion should be granted—'whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.'" *Hartley*, 2022-0840, p. 5, 370 So.3d at 1157 (quoting *Planchard*, 2021-00347, pp. 2-3, 332 So.3d at 625).

4

Thus, "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "'In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence.'" *Precept Credit Opportunities Fund, L.P. v. Elmore*, 2021-0502, p. 3 (La. App. 4 Cir. 4/20/22), 338 So.3d 87, 90 (quoting *Tran v. Collins*, 2020-0246, p. 3 (La. App. 4 Cir. 8/20/21), 326 So.3d 1274, 1278).

The mover bears the burden of proof on summary judgment, which is governed by La. C.C.P. art. 966 (D)(1):

> Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Here, the plaintiffs moved for partial summary judgment arguing that their property rights in their tenured positions as UNO professors were revoked by President Fos without notice or an opportunity to respond, in violation of the Louisiana Constitution and the academic policies of UNO, UL and the Louisiana Board of Regents. Louisiana Constitution article I, § 2 provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

"[T]o prove a violation of substantive due process, [a plaintiff] 'must first establish the existence of a constitutionally protected property or liberty interest.'" *Coxe Prop. Mgmt. & Leasing v. City of New Orleans*, 2019-0911, pp. 7-8 (La.

5

App. 4 Cir. 4/8/20), 294 So.3d 1098, 1104 (quoting *Boudreaux v. Larpenter*, 2011-0410, p. 13 (La. App. 1 Cir. 6/1/12), 110 So.3d 159, 170). Further, "[a] violation of procedural due process occurs when someone does not receive 'notice and an opportunity to be heard' prior to the deprivation of a property or liberty interest." *Kaltenbaugh v. Bd. of Supervisors, S. Univ. & Agric. & Mech. Coll. at Baton Rouge*, 2022-0092, 2022-0093 p. 15 (La. App. 4 Cir. 8/24/22), 346 So.3d 823, 835 (quoting *Oliver v. Orleans Par. Sch. Bd.,* 2014-0329, 2014-0330, p. 35 (La. 10/31/14), 156 So.3d 596, 619-20).

President Fos established policies at UNO that were designed to guide the termination of tenured faculty, UNO Policy AP-AA-18.2. The policy was designed to "bring UNO into compliance with the University of Louisiana System rules and regulations (Bylaws and Rules Part Two, Chapter III, Section XV)" and is applicable in cases where tenured faculty are terminated for cause. The policy provides:

> I. Tenured faculty may be terminated for cause. Cause for discharge, termination of contract, or demotion in rank shall consist of conduct seriously prejudicial to the College or University system such as infraction of law or commonly accepted standards of morality, insubordination, violation of institutional or board rules and regulations, neglect of duty, incompetence, or other actions that impair the discharge of duties and the efficiency of the institution. Financial exigency and/or program discontinuation also constitute cause.
>
> &#42;&#42;&#42;
>
> II. With input from the University Provost, the President will activate a standing University committee of tenured faculty members (the Tenure Revocation Committee or "TRC" or "the committee") who shall hear charges against accused faculty and forward their findings and recommendations to the President who shall make a final determination….It shall be the duty of the President and committee to ensure due process in all matters referred to the committee which would result in the discharge, termination of contract, or demotion in rank of a tenured faculty member.

***

III. Upon activation by the President and notwithstanding any other section of this policy, it shall be the duty of the Tenure Revocation Committee (TRC) to conduct a fact-finding hearing and submit a recommendation to the President [in accordance with the policy provisions].

The policy set forth the parameters for the termination of tenured faculty: (1) time frame within which the committee must meet; (2) how concerned faculty are to be notified; (3) the kind of report the committee must produce; and (4) other procedures that must be followed. The policy requires that procedures be followed in a manner consistent with fairness, equity, and commonly accepted notions of due process. UL System policy number FS-III, XV.B-1a outlines policy on academic program discontinuance and stipulates that reasonable efforts will be made to find positions for tenured faculty from terminated programs within the university or within another institution in the state.

Additionally, the Louisiana Board of Regent's Statement on Academic Freedom, Tenure and Responsibility ("the Statement") established and defined "a uniform, statewide policy on academic freedom, tenure and responsibility for the state's public colleges and universities." Section IV of the Statement provides that "[t]enured faculty shall retain their status until they retire, resign or are terminated for cause or as a result of financial exigency."

In support of the motion for partial summary judgment, the plaintiffs submitted their own affidavits on their behalf. Dr. Yaukey's attested to the following: 1) he was present at an informational meeting held in the University Student Center on December 3, 2014; 2) prior to that meeting, there had been no announcements concerning possible reductions in faculty; 3) members of several departments, including the Geography department, were informed only about a

proposal which "potentially includes a reduction in faculty and staff," and 4) that termination letters would be issued on December 5, 2014. Dr. Yaukey also attested that prior to receiving his termination letter from President Fos on December 5, 2014, he had not received any prior notice nor was he provided any opportunity to be heard before a Tenure Review Committee ("TRC") which reviewed the circumstances of his termination.

Similarly, Dr. Lodhi attested: 1) he was terminated despite the fact that he never resigned his employment with UNO, in violation of UL System tenure policy; 2) he was not terminated for cause or for financial exigency based program discontinuance; 3) he was present at the December 3, 2014 informational meeting held in the University Student Center; 4) prior to that meeting, there had been no announcements concerning possible reductions in faculty; 5) members of several departments, including the Geography department, were informed only about a proposal which "potentially includes a reduction in faculty and staff;" and (6) that termination letters would be issued on December 5, 2014. Dr. Lodhi also attested that prior to receiving his termination letter from President Fos on December 5, 2014, he had never been interviewed by a standing university committee of tenured faculty nor was he interviewed concerning the circumstances of his termination or provided any opportunity to respond to the planned elimination of his position. Dr. Lodhi further attested that he attended a public meeting of the UL Board of Supervisors on December 12, 2014, with the intention to speak in opposition to President Fos's plan to terminate his tenured employment, however, he was not allowed to speak.

The plaintiffs also provided the affidavit of James Lowry, chair of the Department of Geography at the time of their termination.  Mr. Lowry attested that

President Fos's handling of the plaintiffs' terminations was done "with no prior notice or discussion and was sprung on department faculty by surprise." Mr. Lowry also attested to the fact that the Tenure Revocation Committee, Policy 18.2, was "absolutely not followed;" and there was no notice or opportunity for the tenured faculty to present evidence about the circumstances of their termination.

The affidavit of Vern Baxter, Chair of the Tenure, Promotion and Professional Ethics committee was submitted. Mr. Baxter attested: 1) he was present at the December 3, 2014 informational meeting held in the University Student Center where members of certain departments, including the Geography department, were informed of the possibility of their termination; 3) President Fos did not invoke a meeting of the Tenure Revocation Committee as required; and 4) the procedures of Program Discontinuance were not followed as minimal notice and opportunity to object was not given to the affected faculty.

Furthermore, the plaintiffs attached a November 13, 2014 memorandum from Richard Hansen, interim Provost of UNO and Vice President for Academic Affairs, titled "Revitalization and Restructuring of Programs." The memorandum advised UNO students that the Faculty Governance Committee ("FGC") issued a report to President Fos with its recommendation on which programs should be restructured or discontinued. The plaintiffs also attached President Fos's December 4, 2014 memorandum, which advised all faculty and staff that he submitted the Academic Program Restructuring Report to the UL System Board of Supervisors. President Fos's memorandum included the attached report. The Academic Program Restructuring Report provided that Dr. Hansen recommended the elimination of the geography department.

9

In further support of their motion for partial summary judgment, plaintiffs included the January 15, 2015 UNO Faculty Senate Meeting minutes, which provided that neither the UNO Policy AP-AA-18.2 nor the UL System Policy FS-III.XV.B-1a had been followed prior to terminating the plaintiffs as tenured professors:

> It appears that the university has failed to follow policies put in place by President Fos that were designed to guide the termination of tenured faculty. UNO Policy AP-AA-18.2, effective April 11, 2014 and signed by President Fos outlines the procedures that must be followed. . . . The policy requires that this procedure be followed in a "manner consistent with fairness, equity, and commonly accepted notions of due process." In addition, UL System policy number FS-III.XV.B-la, which outlines policy on academic program discontinuance, stipulates that efforts will be made to find positions for tenured faculty from terminated programs within the university or within another institution in the state.

In opposition to the plaintiffs' motion for partial summary judgment, the defendants argued that Dr. Lodhi was not terminated for cause but rather due to the elimination of the Geography department as a result of budgetary cuts. The defendants also argued that Dr. Yaukey retired prior to being terminated, thus his due process rights were not violated. The defendants argued that the plaintiffs' tenure was tied to the Geography department rather than the university, thus once the Geography department was eliminated, the plaintiffs' tenure no longer existed under UL System policy.

In support of their opposition, the defendants attached responses to interrogatories. The defendants' responses provided that the plaintiffs were notified in writing on December 4, 2014 that the Geography department would be eliminated, the program's elimination occurred under LSU's governance of UNO, and closing the department occurred under the UL System governance.

Here, UNO Policy AP-AA-18.2 directs that program discontinuation constitutes cause. UL System policy stipulates that efforts will be made to find positions for tenured faculty from terminated programs within the university or within another institution within the state. The defendants failed to provide any evidence demonstrating that they complied with either of the policies at issue prior to the termination of the plaintiffs as tenured professors. Moreover, the defendants failed to show that the plaintiffs were provided with an opportunity to be heard.

Based on the evidence submitted by the plaintiffs, and the defendants' lack of evidence to controvert that the plaintiffs did not receive due process in accordance with either the UNO policy, UL System policy or as required by the Louisiana Constitution, we find that the defendants failed to establish the existence of a genuine issue of material fact. Consequently, we find the trial court did not err in granting the motion for partial summary judgment in favor of the plaintiffs.

**Breach of Employment Contract**

Next, the defendants argue that the jury erred in finding that the Board of Supervisors breached a contract of employment with the plaintiffs. The defendants further argue that LSU tenure policies and procedures were no longer in effect at the time UNO was transferred to the UL System; and the Board of Supervisors were authorized by La. R.S. 17:3220 to implement its own policies and procedures to resolve issues related to the tenure of employees of UNO.

The "standard for appellate review of jury determinations of fact was set forth in *Mart v. Hill*, 505 So.2d 1120 (La. 1987)." *Danna v. Ritz-Carlton Hotel Co., L.L.C.*, 2020-0116, 2020-0187, 2020-0318 p. 31 (La. App. 4 Cir. 3/24/21), 365 So.3d 679, 701. The *Mart* court established a two-part assessment for the reversal of a factfinders' determination: (1) "the appellate court must find from the

11

record that a reasonable factual basis does not exist for the finding of the trial court, and" (2) "the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous)". *Id.*, p. 31, 365 So.3d at 701-02. "The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at p. 31, 365 So.3d at 702 (quoting *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)). Moreover, "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* at pp.31-32, 365 So.3d at 702 (quoting *Stobart*, 617 So.2d 882-83).

To establish a breach of contract, a party must show the existence of a contract, the party's breach thereof, and damages. *Fireman's Fund Ins. Co. v. R.S. Homes, LLC*, 2019-0621, 2019-0622, p. 10 (La. App. 4 Cir. 3/25/20), 294 So.3d 54, 62-63 (citing *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 2019-0181, p. 8 (La. App. 4 Cir. 7/31/19), 276 So.3d 589, 595).

It is undisputed that the plaintiffs were tenured professors at UNO prior to the elimination of the Geography department. Dr. Lodhi's 1998 offer letter provided that the responsibilities and duties associated with the position would be subject to the provisions outlined in the UNO Faculty Handbook. Dr. Yaukey testified that he received an offer letter and it looked identical to Dr. Lodhi's offer letter. The plaintiffs each testified that that they accepted their offers explicitly and that they each performed six years of work on their tenure track.

Louisiana Revised Statute 17:3230 sets forth the change in governance for UNO from the Board of Supervisors of LSU to the Board of Supervisors for the UL System. Specifically, the UL System "shall develop policies and procedures to resolve issues related to the status and tenure of employees of [UNO] which may arise from the transfer of the institution to the [UL] System." La. R.S. 17:3230 (C).

The UL System policy states in pertinent part:

SECTION XI. TENURE

A. Definition. Indeterminate tenure, hereafter referred to as tenure, is intended to ensure and enhance faculty members' academic freedom and job effectiveness. Tenure assures the faculty member that employment in the academic discipline at the institution will be renewed annually until the faculty member resigns, retires, or is terminated for cause or financial exigency.

***

J. Duration of Tenure. Tenured faculty shall retain their status until they retire, resign, or are terminated for cause or as a result of financial exigency or program discontinuance. Tenure shall be granted and held only within an academic discipline that is offered at the institution and assures renewed appointments only within that discipline. (Revised 2/25/2011)

***

L. Policy. This tenure policy shall supersede all existing policies with the following exceptions:

1. All persons holding tenure on the effective date of this policy shall retain their tenure.

2. Any person in the employment of an affected institution on the effective date of this policy shall be eligible to earn tenure under the terms and conditions of the policy in force and in effect at the time of that person's employment at that institution.
(Revised 2/25/2011)

While the UL System policy explains that tenured faculty shall retain their status until they retire, resign, or are terminated for cause or as a result of financial exigency or program discontinuance, it also provides an exception that all persons

13

holding tenure on the effective date of the policy shall retain their tenure. Moreover, the policy explains that any person employed at an affected institution on the effective date of the policy shall be eligible to earn tenure under the terms and conditions of the policy in force and in effect at the time of that person's employment at the institution.

Here, the plaintiffs gained tenured status prior to the policy's effective date. The duration of tenure clause of the UL System policy is applicable to individuals who were subsequently employed at UNO. The policy does not cancel or modify the terms and conditions of the UNO policy in effect at the time of the plaintiffs' employment. Further, the UNO policy in effect at the time of the plaintiffs' employment did not include program discontinuance language but rather explained that "[t]enure is not a guarantee of lifetime employment, particularly in face of institutional change or financial exigency. It does assure that the employee will not be dismissed without adequate justification and without due process." Additionally, the Board of Regiments' Statement on Academic Freedom, Tenure and Responsibility provided that "[t]enured faculty shall retain their status until they retire, resign, or are terminated for cause or as a result of financial exigency."

At trial, President Fos testified that financial exigency is the imminent danger that the university is going to close. He confirmed that a state of financial exigency was never declared. Significantly, the record is void of evidence of the plaintiffs retiring, resigning, or being terminated for cause. Moreover, the plaintiffs did not receive due process in accordance with either the UNO policy, UL System policy, or as required by the Louisiana Constitution.

The jury weighed the evidence presented and determined that the defendants breached the employment contracts with Dr. Lodhi and Dr. Yaukey. In light of the record, we find the jury's findings are reasonably supported.

**Award of Sick Leave**

The defendants contend that the jury erred in awarding damages for lost accrued sick leave to the plaintiffs. Dr. Lodhi was awarded $81,000.00, and Dr. Yaukey was awarded $115,000.00. The defendants further argue that the award of sick leave was contrary to applicable statutes and the UNO Handbook policies in effect at the time of the plaintiffs' employment. The defendants additionally argue that unused sick leave should only be paid to employees who retired or have died. The defendants contend that Dr. Yaukey retired and was paid approximately $9,000.00 upon his separation from employment with UNO.

In opposition, the plaintiffs argue that La. R.S. 17:3312 applies in cases where the employee dies or retires, while in other circumstances the university must pay the full amount of leave. The plaintiffs also argue that Dr. Yaukey's retirement was an improper constructive discharge, rather than a true retirement.

The defendants are correct that the plaintiffs are not entitled to accrued sick leave. The payment of sick leave under the UL System is governed by La. R.S. 17:3312(A)(7), which provides in relevant part:

> Upon death or retirement of an unclassified employee, sick leave accrued to his credit shall be computed and the value thereof shall be paid to him provided that the sick leave had been accrued under established leave regulations and a daily attendance record has been maintained for the employee by his supervisor, except that such payment shall not exceed the value of twenty-five working days computed on the basis of a five-day week and on a four-week per month basis for personnel employed on a less than twelve month employment basis and on the basis of a five-day week and fifty-two week year for twelve-month employees. The rate of pay shall be

15

computed utilizing the base rate the employee is receiving at the time of termination.

Here, La. R.S. 17:3312(A)(7) does not require UNO to pay the plaintiffs for the value of their accrued sick leave. The statute requires that the unclassified employee be paid accrued sick leave upon death or retirement. As the plaintiffs specified, neither of the plaintiffs retired nor are they deceased. Dr. Lodhi was terminated due to the elimination of the Geography department, and Dr. Yaukey did not have a true retirement as result of a constructive discharge due to the elimination of the Geography department. Particularly, "a constructive discharge occurs when an employee quits his job under circumstances that are treated as an involuntary termination." *Voltolina v. City of Kenner*, 20-151, p. 8 (La. App. 5 Cir. 12/2/20), 306 So.3d 640, 646 (The court held that the plaintiff did not voluntarily retire as he did not request to retire and he wrote a statement that he was being forced into retirement, thus a reasonable employee in the plaintiff's shoes would have felt compelled to retire.)

Therefore, pursuant to La. R.S. 17:3312(A)(7), plaintiffs do not meet the criteria to recover accrued sick leave. It is a well-settled rule that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of its intent. La. C. C. art. 9; La. R. S. 1:4. The record does not furnish a reasonable factual basis for the jury's finding that the plaintiffs were entitled to the award of sick leave.

**Duty to Mitigate Damages**

In the last assignment of error, defendants argue that the jury erred in not considering Dr. Lodhi's failure to mitigate damages after his termination of his

employment with UNO. The defendants contend that Dr. Lodhi failed to mitigate his damages by only submitting up to thirty applications for employment after receiving notice of the termination of his position.

Mitigation is an affirmative defense in which the defendant bears the burden of proof. *Overton v. Shell Oil Co.*, 2005-1001, p. 19 (La. App. 4 Cir. 7/19/06), 937 So.2d 404, 416 (citation omitted). "An improperly dismissed employee may not simply remain idle and recover lost wages from the date of discharge. He must make a reasonable effort to find other suitable employment; although he need not go into another line of work, accept a demotion, or take a demeaning position." *Soulier v. Hood Container of Louisiana, L.L.C.*, 2019-0073, p. 8 (La. App. 1 Cir. 9/27/19), 287 So.3d 737, 744 (citing *Rideau v. Lafayette Health Ventures, Inc.*, (W.D. La. 2019), 2019 WL 1987185 at *4-5); *See Overton*, 2005-1001, pp. 19-20, 937 So.2d at 416 (citation omitted) (The Court noted a plaintiff must only take "reasonable steps" to mitigate his damages).

In *Soulier*, the court determined whether the trial court erred in refusing to limit the plaintiff's award of damages. The defendant employer argued that the plaintiff failed to mitigate his damages by making a reasonable effort to obtain suitable employment after his termination. *Id.*, 2019-0073, p. 8, 287 So.3d at 744. The court considered the plaintiff's testimony that he reached out to several of his contacts in the industry to inquire about possible employment opportunities; however, he received no offers. The court noted the employer had the burden of proving there was a reasonable likelihood that the plaintiff could have obtained suitable employment through reasonable efforts. The court found that because the employer failed to offer existence of suitable employment opportunities for the plaintiff, it failed to satisfy its burden. *Id.* at p. 9, 287 So.3d at 745.

In the present matter, Dr. Lodhi attested he applied for positons that were available in other departments at UNO. Dr. Lodhi testified that after he lost his job at UNO, he applied to approximately thirty universities. He also testified that he applied for jobs in private and public sectors, such as government jobs and commercial jobs that were in his area of expertise. By analogy to *Soulier*, the defendants failed to offer evidence of the existence of suitable employment opportunities for Dr. Lodhi. Beyond that, the UL System policy stipulated that reasonable efforts would be made to find positions for tenured faculty from terminated programs within the university or within another institution in the state and Dr. Lodhi was not hired. As such, we do not find merit in this assignment of error.

**CONCLUSION**

For the foregoing reasons, we affirm the November 30, 2020 judgment granting the partial motion for summary judgment on the issue of procedural due process liability in favor on the plaintiffs.

We affirm the portions of the May 1, 2023 judgments awarding the plaintiffs past lost earnings, past and future mental anguish, loss of professional reputation, and lost fringe benefits.

We reverse the portions of the May 1, 2023 judgments awarding Dr. Lodhi $81,000.00 and Dr. Yaukey $115,000.00 in loss of accrued sick leave.

Dr. Lodhi's award is reduced from $772,020.00 to $691,020.00:

| | |
|---|---|
| Past Lost Earnings | $406,020.00 |
| Lost Accrued Sick Leave | $0 |
| Past and Future Mental Anguish | $175,000.00 |
| Loss of Professional Reputation | $100,000.00 |

| Lost Fringe Benefits | $10,000.00 |
|---|---|
| **TOTAL** | **$691,020.00** |

Dr. Yaukey's award is reduced from $515,336.00 to $400,336.00:

| Past Lost Earnings | $145,336.00 |
|---|---|
| Lost Accrued Sick Leave | $0 |
| Past and Future Mental Anguish | $100,000.00 |
| Loss of Professional Reputation | $150,000.00 |
| Lost Fringe Benefits | $5,000.00 |
| **TOTAL** | **$400,336.00** |

As amended, we affirm the May 1, 2023 judgments.

**AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND
AS AMENDED, AFFIRMED**